NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGORY FISHER, | Civil Action No. 23-20947 (GC-JBD) |
| Plaintiff, | |
| v. | OPINION |
| COUNTY OF MERCER, | |
| Defendants. | |

**CASTNER, United States District Judge**

This matter comes before the Court on a motion to dismiss brought by Defendants County of Mercer and Warden Charles Ellis (together, "County Defendants"). (ECF No. 4.) The County Defendants seek dismissal of Plaintiff Gregory Fisher's Complaint, which raises claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"). For the reasons explained in this Opinion, the motion to dismiss the § 1983 and NJCRA claims against the County Defendants is **GRANTED**. The Court dismisses the Complaint without prejudice and provides Plaintiff with leave to submit an amended complaint within 45 days.

I.     FACTUAL ALLEGATIONS & PROCEDURAL HISTORY

    a. The Complaint

Plaintiff's Complaint arises from alleged violations of his federal and state constitutional rights that occurred at Mercer County Correctional Center ("MCCC") in July and August 2022, after Plaintiff was transferred to MCCC from Camden County Correctional Facility ("CCCF"). (*See Generally*, Complaint.)

Count One is asserted against Warden Ellis in his official capacity. (*See* Complaint Heading at 2.) Plaintiff alleges that on July 12, 2022, he was examined by a Nurse Practitioner, Nancy Gordon, who is an employee of C.F.G. Health Systems, LLC, and was responsible for Plaintiff's health care. (Complaint at ¶¶ 9-11.) Gordon noted in Plaintiff's chart that he had chronic back pain, consisting of a herniated nucleus pulpous, confirmed by MRI, chronic knee pain as a result of four knee surgeries, and was taking medications. (*Id.* at ¶ 12.) Also on July 12, Gordon authorized back and knee braces for Plaintiff to wear and noted in his chart that "Plaintiff's workup for confirmation of malignancy concerning lesions on his thyroid, liver[,] and lung w[ere] in process." (*Id.* at ¶¶ 13-14.) The malignancy workup started at the CCCF medical department.[1] (*Id.* at ¶ 15.) On July 14, 2022, Plaintiff received his back brace and knee brace. (*Id.* at ¶ 17.)

"Prior to July 31, 2022, Plaintiff was allowed to sleep on two mattresses to get relief from his back pain[,]" but on that date "one of the two mattresses which Plaintiff used to sleep on was taken away by order of Lieutenant Fioranti[,]" an employee of the County of Mercer. (*Id.* at ¶¶ 18-21.)

On July 25, 2022, and August 1, 2022, Plaintiff submitted medical slips to the Medical Department. (*Id.* at ¶¶ 22-23.) In the medical slips, Plaintiff "requested treatment for serious medical need(s)," but these medical slips "were ignored" by the Medical Department. (*Id.* at ¶¶ 24-25.) On August 7 and 8, 2022, an "outside caller made phone calls to the Medical Department on Plaintiff's behalf" and requested "immediate treatment for serious medical need(s)." (*Id.* at ¶¶ 26-28.) These outside calls were also ignored by the Medical Department. (*Id.* at ¶ 29.)

---

[1] Plaintiff was transported to Cooper Hospital on July 11, 2022, and received an MRI on his liver. (*Id.* at ¶ 16.)

About a day later, on August 9 or 10, 2022, Plaintiff was examined by Gordon, and she "noted on the chart that Plaintiff had positive complaints of dizziness, pain, and overall not feeling well"[2] and also noted that Plaintiff was requesting information on the status of his treatment. (*Id.* at ¶¶ 30-32.) On August 10, 2022, Gordon "admitted to Plaintiff that he would not be receiving any further treatment from the [MCCC] medical department as retaliation for filing a lawsuit against C.F.G. and [CCCF]." (*Id.* at ¶ 33.) On the same date, Gordon also "admitted to Plaintiff that the retaliation he was experiencing was as the result of a policy of C.F.G. and the [MCCC] to deny him any further treatment for his serious medical need(s)." (*Id.* at ¶ 34.) Gordon told Plaintiff "her hands were tied" and there was nothing she could do to get him adequate treatment for his serious medical needs. (*Id.* at ¶ 35.)

Gordon also admitted to Plaintiff that his second mattress was taken away by officers as retaliation for filing a lawsuit against C.F.G. and CCCF. (*Id.* at ¶ 36.) Gordon further admitted that the retaliation Plaintiff was experiencing resulted from a "policy of the [MCCC] to deny him any further relief for his serious back condition." (*Id.* at ¶ 37.) Gordon also allegedly "admitted to Plaintiff that her hands were tied and there was nothing she could do to order him a second mattress to get relief for his serious medical condition." (*Id.* at ¶ 38.) Plaintiff alleges that he was denied further medical treatment/relief for his serious medical needs until he was transferred out of MCCC on or about August 16, 2022. (*Id.* at ¶ 39.)

According to the Complaint, "[t]he individual Defendant WARDEN CHARLES ELLIS, promulgated a policy denying Plaintiff any further treatment for his serious medical needs for the duration of Plaintiff's stay in MCCC[,]" and "the policy to deny Plaintiff any further treatment for

---

[2] Plaintiff does not provide facts connecting these symptoms to the specific medical conditions he describes in the complaint.

3

his serious medical needs was a form of punishment." (*Id.* at ¶¶ 40-41.)  This policy to deny Plaintiff further treatment for his serious medical needs was allegedly executed by the employees of C.F.G. from July 25, 2022, to August 16, 2022, and violated his rights under the Due Process Clause.  (*Id.* at ¶¶ 42-43.)

Plaintiff also alleges that Ellis "promulgated a policy denying Plaintiff a second mattress to get any further relief from his serious back condition" and that "the policy . . . was a form of punishment." (*Id.* at ¶¶ 44-45.)  The policy of denying Plaintiff a second mattress was allegedly "executed under the command of Lieutenant Fioranti[.]" (*Id.* at ¶ 46.)  Plaintiff contends that the policy of denying Plaintiff a second mattress violated his rights under the Due Process Clause.  (*Id.* at ¶ 47.)

In Count Two of the Complaint, Plaintiff asserts a *Monell*[3] claim and NJCRA claim against the County of Mercer and alleges that Warden Ellis "was a high-enough-ranking public official so that the policies he promulgated could be said to be the policies promulgated by Defendant COUNTY OF MERCER." (*Id.* at ¶ 50.)  Plaintiff claims that Ellis' policies to 1) deny Plaintiff further treatment for his serious medical needs and 2) deny Plaintiff a second mattress for his serious back condition were also "policies promulgated by the County of Mercer." (*Id.* at ¶¶ 51-52.)

In Count Three, Plaintiff alleges a First Amendment retaliation claim under § 1983 and the NJCRA against Warden Ellis in his official capacity.  (*See* Complaint Heading at 10.)  Plaintiff alleges that he engaged in protected activity by filing and serving a complaint in Civil Action No. 21-13212 (RBK-EAP) against the County of Camden and C.F.G. (*Id.* at ¶ 55.)  Plaintiff further alleges that Ellis "came to know of this protected activity" and promulgated policies "to deny

---

3    *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).

Plaintiff any further treatment for his serious medical needs" and "deny Plaintiff a second mattress to get further relief for his serious back condition." (*Id.* at ¶¶ 55-58.) Plaintiff alleges that these two policies "were caused by [Ellis'] knowledge of Plaintiff's protected activity" and were done in retaliation for Plaintiff's exercise of his right to file and serve Civil Action No. 21-13212. (*Id.* at ¶¶ 59-62.) Plaintiff also alleges that Ellis' retaliatory policies violate Plaintiff's federal and state constitutional rights of "free exercise/petition/access to [the] courts." (*Id.* at ¶ 63.)

In Count Four, Plaintiff alleges a *Monell* and NJCRA claim against the County of Mercer. Plaintiff alleges that Ellis' policies to deny Plaintiff medical treatment and a second mattress in retaliation for Plaintiff's filing of a lawsuit were also policies of the County of Mercer, "caused by the County's knowledge of Plaintiff's protected activities." (*Id.* at ¶¶ 66-67.) Plaintiff further alleges that these policies, which were acts of retaliation by Ellis, were also acts of retaliation by the County of Mercer, for Plaintiff's filing of Civil Action No. 21-13212. (*Id.* at ¶¶ 68-69.) Plaintiff contends that the County of Mercer's retaliation against Plaintiff violates his federal and state constitutional rights to "free expression/petition/access to [the] courts." (*Id.* at ¶ 70.)

In Count Five of the Complaint, Plaintiff brings a claim for denial of access to the Courts against Defendant Ellis in his official capacity. (*See* Complaint Heading at 13.) Plaintiff alleges that when he was transferred from MCCC to Cooper Hospital to Burlington County Detention Center ("BCDC") on August 16-18, 2022, Ellis "formulated a policy not to transfer Plaintiff's legal work, legal documents, and other property to [BCDC]." (*Id.* at ¶¶ 73-74.) Ellis allegedly did so "deliberately to deprive Plaintiff of their use." (*Id.* at ¶ 74.) Plaintiff complained to the transporting officer that he was being transferred without his legal work, legal documents, and other property, and the officer admitted to Plaintiff that "he was right to complain" about this issue. (*Id.* at ¶¶ 75-76.) The transporting officer told him "it was safe to say that Plaintiff was pissing off

someone at [MCCC], and withholding his legal work, legal documents, and other property was retaliation on the part of MCCC." (*Id.* at ¶ 77.) Upon arrival at BCDC, Officer Fulton "admitted" that Plaintiff's arrival without any property was "unheard of" and also stated that Plaintiff must have "pissed someone off" at MCCC because he should have been accompanied by "at least his legal documents, per policy." (*Id.* at ¶ 78.) Officials at BCDC, Plaintiff's family members, and Plaintiff's criminal attorney "reached out to MCCC numerous times about sending Plaintiff's legal work, legal documents, and other property to BCDC, all to no avail." (*Id.* at ¶ 79.) On September 15, 2022, Plaintiff's attorney in this civil action, Peter Kober, Esq. ("Mr. Kober"), spoke with Warden Ellis on the phone and he promised he would look for Plaintiff's property; Mr. Kober also submitted an authorization to permit Plaintiff's property to be sent to his law office, as requested by Ellis, but nothing came of this conversation. (*Id.* at ¶ 80.)

Plaintiff alleges that "[a]s a result of not being in possession of his legal work, legal documents, and other property, Plaintiff was unable to assist his attorney in preparing an adequate defense to the criminal charge(s) pending against him." (*Id.* at ¶¶ 81-82.)

In Count Six, Plaintiff asserts a *Monell* claim under § 1983 and the NJCRA arising from these same facts and alleges that

> [t]he policy promulgated by Defendant WARDEN CHARLES ELLIS to withhold Plaintiff's legal work, legal documents, and other property was also the policy promulgated by Defendant COUNTY OF MERCER, and, as such it was a policy which infringed on Plaintiff's right of access to the courts, to assist legal counsel and participate in his own defense to criminal charges pending against him[.]

(*Id.* at ¶¶ 87-88.)

In Count Seven, Plaintiff brings § 1983 and NJCRA claims against Warden Ellis in his official capacity (*see* Complaint Heading at 16) and alleges that Ellis knew about Plaintiff's lawsuit and created the policy to withhold Plaintiff's legal work, legal documents, and other property in

6

retaliation for Plaintiff's filing and serving of that action. (Complaint at 17; *id.* at ¶¶ 91-92.) Plaintiff also alleges that retaliation for filing a lawsuit is a violation of Plaintiff's federal and state constitutional rights. (*Id.* at ¶ 93.)

In Count Eight, Plaintiff alleges a *Monell* claim against the County of Mercer, and alleges that Ellis' policy of withholding Plaintiff's legal work in retaliation for his filing and serving of his federal lawsuit was also a policy of the County of Mercer, which had knowledge of Plaintiff's protected activity, i.e., the filing and serving of Plaintiff's lawsuit. (*Id.* at ¶¶ 93-98.)

### b. Procedural History

Plaintiff's counsel originally filed Plaintiff's Complaint in the Superior Court of New Jersey, Mercer County, on August 16, 2023. (ECF No. 1, Notice of Removal at 1-2.) The County Defendants were served on August 31, 2023. (*Id.* at 2.) On November 29, 2023, the County Defendants moved to dismiss the Complaint. (ECF No. 4.) Plaintiff filed an opposition brief through counsel. (ECF No. 9.) On January 10, 2024, County Defendants filed their reply brief, and Plaintiff's counsel filed a sur-reply brief on January 16, 2024, after receiving the Court's permission. (ECF Nos. 10-13.) The matter is fully briefed and ready for a decision.

## II. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55

F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). A defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

### III.   DISCUSSION

Plaintiff alleges violations of his civil rights under 42 U.S.C. § 1983[4] and the NJCRA,[5] and Defendants argue that Plaintiff fails to state claims for relief against Warden Ellis in his individual capacity, that Warden Ellis is entitled to qualified immunity, and that Plaintiff fails to state a *Monell* claim against the County of Mercer. (*See* ECF No. 4-3 at 19-35.) Based on the Court's review of Plaintiff's Complaint, Plaintiff has sued Warden Ellis in his official capacity only.[6] (*See* Complaint Headings for Counts One, Three, Five, and Seven.) When a plaintiff names a government official in his individual or personal capacity, the plaintiff is seeking "to impose

---

[4]  "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or the laws of the United States committed by a person acting under the color of state law." *Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 580–81 (3d Cir. 2003) (citations omitted).

[5]  The NJCRA protects federal rights and substantive rights under New Jersey's Constitution. *See Gormley v. Wood-El*, 218 N.J. 72, 97 (2014) ("Section 1983 applies only to deprivations of federal rights, whereas N.J.S.A. 10:6-1 to -2 applies not only to federal rights but also to substantive rights guaranteed by New Jersey's Constitution and laws."). The NJCRA is typically treated as the state court analog to § 1983, and the Court considers the claims together.

[6]  Plaintiff also lists John/Jane Does 1-10 in the caption, but he does not provide any facts about these Defendants.

personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* at 165-66 (citing *Monell*, 436 U.S. at 690, n. 55). Therefore, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" and "the real party in interest is the entity." *Id.*

Here, Plaintiff, who has counsel, pleads Counts One, Three, Five, and Seven against Ellis in his official capacity only. For that reason, the Court views these claims, as well as Counts Two, Four, Six, and Eight, as arising under *Monell* and does not read the Complaint to allege any § 1983 or NJCRA claims against Ellis in his individual capacity. Therefore, the Court does not address Defendants' arguments that Plaintiff fails to state a claim for relief against Warden Ellis in his individual capacity or that Ellis is entitled to qualified immunity, which is only available to officers in individual capacity suits.[7] *See Pearson v. Callahan*, 555 U.S. 223, 244 (2009) ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."); *Brandon v. Holt*, 469 U.S. 464, 471–73 (1985) (doctrine of qualified immunity shields officials acting and sued in their individual capacities).

---

[7] The Court notes, however, that defendants may be sued in their individual capacities as policymakers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989) ) Moreover, direct supervisory liability against the individual may be based on his or her participation in the constitutional violation and does not require any proof of official policy or custom as the "moving force," *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)), behind the conduct. Plaintiff's counsel appears to acknowledge that Warden Ellis is sued in his official capacity only in Counts I, III, V and VII. (*See* ECF No. 13, Pl. Sur Reply at 7.) If, however, Plaintiff intended to sue Ellis in his individual or personal capacity as a supervisor, he is free to submit an amended complaint that sets forth those facts and claims.

Instead, the Court addresses Defendants' arguments that Plaintiff fails to state a *Monell* claim against the County of Mercer, and, by extension, against Warden Ellis in his official capacity. Under *Monell*, a municipality cannot be held liable under a respondeat superior theory, *i.e.*, solely because it employs a tortfeasor; instead, "a city is only liable under § 1983 for constitutional violations that are caused by its official policies and customs."[8] *Porter v. City of Philadelphia*, 975 F.3d 374, 383 (3d Cir. 2020) (citing *Monell*, 436 U.S. at 690); *see also Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 761 (3d Cir. 2019) (explaining that a municipality is only liable for a policy or custom promulgated by an actor with final decision-making authority). "A policy need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purposes of § 1983. A pertinent decision by an official with final decision-making authority on the subject constitutes an official policy for purposes of *Monell* liability. *See Porter*, 975 F.3d at 383 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)) ("Municipal liability under § 1983 attaches where . . . a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

> The "official policy" requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Monell* reasoned that recovery from a municipality is limited to acts that are, properly

---

[8] A § 1983 claim against a municipality may proceed in two general ways. *See Estate of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019). A plaintiff may allege that an unconstitutional policy or custom of the municipality led to his or her injuries, *id.* at 798 (citing *Monell*, 436 U.S. at 694), or that his injuries were caused by a failure or inadequacy by the municipality that "reflects a deliberate or conscious choice," *see id.* (internal quotation marks omitted) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)); *see also Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (explaining that the second type of *Monell* claim involves failures to train, supervise, or discipline). Plaintiff's allegations involve the first type of *Monell* liability.

> speaking, acts "of the municipality"—that is, acts which the municipality has officially sanctioned or ordered.

*Pembaur*, 475 U.S. 469, 479–80. Thus, "if the conduct was simply that of an individual employee who was not acting pursuant to a policy or custom, that conduct cannot give rise to municipal liability under *Monell*." *Porter*, 975 F.3d at 383.

Plaintiff alleges that Warden Ellis promulgated unconstitutional "policies" directed solely at him in retaliation for Plaintiff's filing of a prior federal lawsuit. The parties dispute whether this type of decision can ever state a claim under *Monell*. A *Monell* claim can involve a single decision or isolated incidents, *see Praprotnik*, 485 U.S. at 123 (An unconstitutional governmental policy may "be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business."), and "[p]olicy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *G.S. v. Penn-Trafford School District*, 2023 WL 4486667, at *3 (3d Cir. 2023) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). At the pleading stage, "a plaintiff must show that an official who has the power to make policy is responsible for the action." *See id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). In turn, when "deciding who has policymaking responsibility, 'a court must determine which official has final, unreviewable discretion to make a decision or take an action,' a question that is answered by looking to state law." *Andrews*, 895 F.3d at 1481; *Pembaur*, 475 U.S. at 483 ("[W]hether an official had final policymaking authority is a question of state law."). Moreover, "[t]he fact that a particular official . . . has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Porter*, 975 F.3d at 385 (citing *Pembaur*, 475 U.S. at 481-83). Instead, "[t]he official

11

must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.*

At issue then is whether Plaintiff sufficiently pleads a *Monell* claim based on Ellis' alleged promulgation of retaliatory policies against him. Here, Plaintiff alleges that Warden Ellis is "responsible for the operations of" MCCC and promulgated policies to deny Plaintiff medical care, remove a second mattress from his cell, and withhold Plaintiff's legal papers, legal documents, and other property. According to the Complaint, Ellis allegedly found out about a federal lawsuit Plaintiff filed in 2021 against C.F.G. and CCCF and created these policies to retaliate against Plaintiff for his protected activity. Although Plaintiff repeatedly characterizes Warden Ellis' alleged misconduct as "policies," he fails to allege sufficient facts showing that Ellis was a decisionmaker possessing final authority to establish these alleged policies on behalf of the County of Mercer. That is, Plaintiff does not provide sufficient facts showing that Ellis had any policymaking authority regarding an inmate's medical care or property. Nor does he provide any facts showing that New Jersey law provides the Warden with final policymaking authority in these areas. Instead, Plaintiff merely alleges that Ellis "was a high-enough-ranking public official so that policies that he promulgated could be said to be the policies promulgated by [the County of Mercer]." (*See* Complaint at ¶ 50.) These allegations do not state a plausible claim under *Monell* because, accepting them as true, it is just as plausible that Ellis acted beyond the scope of his employment when he made these decisions, which would not give rise to municipal liability. The Court also credits Plaintiff's allegations that Gordon told him that he was being denied medical care and a second mattress due to a policy at MCCC, but those facts do not suggest that Ellis had any authority to create policies about Plaintiff's medical care on behalf of Mercer County. And without sufficient facts from which the Court can infer that Warden Ellis has final policymaking

authority in the relevant areas, Plaintiff's claims against the County of Mercer rely on an impermissible theory of respondeat superior.

Plaintiff also contends that the issue of whether Warden Ellis is a final policymaker is a matter for discovery, but under *Pembaur*, 475 U.S. at 483, it is a legal question that is governed by state law. The Third Circuit has held that a plaintiff alleging a *Monell* claim must plead at least some facts regarding this "key element." *See Santiago v. Warminster Tp.*, 629 F.3d 121, 135 n.11 (3d. Cir. 2010) (explaining that the issue of whether a defendant is a final policymaker is ultimately a legal rather than a factual question but "that does not relieve her of the obligation to plead in some fashion that he had final policy making authority, as that is a key element of a *Monell* claim"). For these reasons, the Court grants the County Defendants' motion to dismiss[9] and provides Plaintiff with leave to amend if he can cure the deficiencies in his *Monell* claims against the County of Mercer and Warden Ellis or otherwise clarify his claims for relief.

## IV.   CONCLUSION

The Court grants the County Defendants' motion to dismiss and dismisses without prejudice Plaintiff's Complaint for failure to state a claim for relief under *Monell*. Plaintiff may submit an amended complaint within 45 days to the extent he can cure the deficiencies in his federal claims for relief.[10] An appropriate Order follows.

Dated: July 31, 2024

*Georgette Castner*
GEORGETTE CASTNER
United States District Judge

---

[9] Because the Court grants the motion to dismiss the Complaint against the County of Mercer and Warden Ellis in his official capacity for failure to plead the elements of a *Monell* claim, it need not address County Defendants' other arguments. If Plaintiff elects to submit an amended complaint, he should include sufficient facts to meet the federal pleading standards, as set forth above in Section II, for each claim for relief.

[10] The request to stay discovery is denied as moot considering the dismissal of the Complaint.