NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGORY L. FISHER,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF MERCER, *et al.*,<br><br>Defendants. | Civil Action No. 23-20947 (GC) (JBD)<br><br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court on Defendants Warden Charles Ellis's ("Ellis") and the County of Mercer's ("Mercer County") Motion to Dismiss Plaintiff Gregory L. Fisher's Second Amended Complaint under Federal Rule of Civil Procedure (Rule) 12(b)(6). (ECF No. 31 ("Motion").) Plaintiff filed a brief in opposition to the Motion (ECF No. 33), and Defendants submitted a reply brief in further support of their Motion (ECF No. 34). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule off Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff's Second Amended Complaint arises from alleged violations of his federal and state constitutional and statutory rights that occurred at Mercer County Correctional Center ("MCCC") in 2022, after Plaintiff was transferred to MCCC from Camden County Correctional

Facility ("CCCF").

Specifically, Plaintiff alleges that, on July 8, 2022, he was transferred from CCCF to MCCC. (ECF No. 28 ¶ 7.) On July 12, 2022, Plaintiff was examined by Nancy Gordon, a nurse practitioner at MCCC. (*Id.* ¶ 10.) Gordon reviewed the chart created by CCCF's Medical Department. (*Id.* ¶ 11.) The nurse practitioner wrote on the chart that Plaintiff had chronic back pain, consisting of a herniated nucleus pulposus confirmed by an MRI. (*Id.* ¶ 12.) Gordon also read on the chart that a physician at CCCF had prescribed a double mattress for Plaintiff, and she told Plaintiff that he would be getting a double mattress. (*Id.* ¶ 13.) She additionally authorized back and knee braces for Plaintiff to wear. (*Id.* ¶ 15.)

Plaintiff was subsequently provided with a double mattress, and on July 14, 2022, he was given his back and knee braces. (*Id.* ¶ 16.) Plaintiff was allowed to lie on two mattresses to get relief from his back pain so he could sleep. (*Id.* ¶ 18.)

On July 31, 2022, one of the two mattresses was taken away by officers on the order of Lieutenant Fioranti. (*Id.* ¶ 19.)

At some point prior to August 10, 2022, Plaintiff filed a civil action against the County of Camden ("Camden County") and C.F.G. Health Systems ("C.F.G.") in the United States District Court for the District of New Jersey. (*Id.* ¶ 24.) Ellis, the Warden of MCCC, "came to know" that Plaintiff had filed this lawsuit. (*Id.* ¶ 25.)

On August 10, 2022, Plaintiff was examined by Gordon. (*Id.* ¶ 21.) Gordon documented Plaintiff's complaints of dizziness, pain, and "overall not feeling well" and noted that Plaintiff asked for information concerning the status of his treatment. (*Id.* ¶¶ 22-23.) The nurse admitted to Plaintiff the following details regarding his treatment: Plaintiff's second mattress was taken away by officers, and Plaintiff would not be receiving any further treatment from the MCCC

Medical Department, in retaliation for him filing the lawsuit against C.F.G. and CCCF; this denial of further treatment for his serious medical needs and the taking away of his second mattress were the results of orders from Ellis to deny him any further treatment for his serious medical needs and serious back condition as retaliation for the filing of the lawsuit; "her hands were tied," and there was nothing she could do to get him adequate medical treatment for his serious medical needs or to order him a second mattress so he get relief from his serious back condition. (*Id.* ¶¶ 26-31.)

The deprivation of further medical treatment/relief for his serious back condition continued until Plaintiff's last day at MCCC. (*Id.* ¶ 31.) On August 18, 2022, Plaintiff was transferred from MCCC to CCCF and, finally, to Burlington County Detention Center ("BCDC"). (*Id.* ¶ 33.) Ellis withheld "Plaintiff's legal work, legal documents and other property" to deliberately deprive Plaintiff of their use. (*Id.* ¶ 34.) Accordingly, "[o]n the aforesaid date [August 18, 2022] and until December 16, 2022, MCCC did not transfer Plaintiff's legal work, legal documents, holy book and other property to either [CCCF] or [BCDC]." (*Id.* ¶ 35.) BCDC officials, Plaintiff's family members, and his criminal attorney reached out to MCCC and/or Ellis "numerous times" about sending Plaintiff's work, legal documents, and other property to BCDC; however, they were unsuccessful. (*Id.* ¶ 37.) Plaintiff's "intact" legal work, legal documents, holy book, and other property arrived at BCDC from MCCC and provided to Plaintiff on December 16, 2022. (*Id.* ¶ 43.)

On May 23, 2022, Petitioner had signed a court document evidencing an intent to enter into a plea bargain with respect to pending state criminal charges. (*Id.* ¶ 38.) Subsequently, Plaintiff "formed an intent to renege" on "his formerly evidenced intent to plea bargain" and "needed to assist his criminal attorney in preparing an adequate defense to the criminal charge(s) against him between August 18-Deccember 16, 2022, so as to renege." (*Id.* ¶¶ 39-40.) However,

3

as a result of not possessing his legal work, legal documents, and other property, Plaintiff was not able to assist his attorney in preparing an adequate defense "in the time between August 18-December 16, 2022, so as to renege" on his intent to plea bargain. (*Id.* ¶¶ 41-42.) On October 6, 2023, as a result off his failure to assist counsel in preparing a defense, Plaintiff had to plead guilty to a reduced charge and was sentenced to a prison sentence. (*Id.*)

In his Second Amended Complaint, Plaintiff alleges twelve counts against Mercer County and/or Ellis: (1) a claim under Title II of the Americans for Disabilities Act ("ADA") against Mercer County; (2) a claim under 42 U.S.C. § 1983 for denial of due process for interfering with Plaintiff's prescribed medical treatment for a serious medical need against Ellis; (3) a § 1983 claim for retaliating against Plaintiff's exercise of protected activity by causing the denial of any further treatment of Plaintiff's serious medical needs against Ellis; (4) a § 1983 claim for denial of access to courts and interfering with Plaintiff's ability to assist legal counsel and participate in his own defense against Ellis; (5) a § 1983 claim for interference with the right to worship in the religion of one's choice under the First Amendment against Ellis; (6) a § 1983 claim for retaliating against Plaintiff's exercise of protected activity by causing the withholding of Plaintiff's legal work, legal documents, holy book, and other property against Ellis; (7) a public accommodation claim under the New Jersey Law Against Discrimination ("NJLAD") against Mercer County; (8) a claim under the New Jersey Civil Rights Act ("NJCRA") for denial of due process by interfering with Plaintiff's prescribed medical treatment for a serious medical need against Ellis; (9) a NJCRA claim for retaliating against Plaintiff's exercise of protected activity by causing the denial of further treatment for Plaintiff's serious medical needs against Ellis; (10) a NJCRA claim for denial of access to the courts and interference with Plaintiff's right to assist legal counsel and participate in his own defense against Ellis; (11) a NJCRA claim for interference with a right to worship in the

religion of one's choice against Ellis; and (12) a NJCRA claim for retaliating against Plaintiff's exercise of protected activity by causing the withholding of Plaintiff's legal work, legal documents, holy book, and other property against Ellis. (*Id.* at ¶¶ 45-73.)

Ellis is named only in his individual capacity. (*Id.*) Alleging that he suffered physical pain and suffering, lack of sleep, and emotional distress/mental anguish as a result of Ellis's actions (*id.* ¶ 44), Plaintiff requests compensatory and punitive damages as well as reasonable attorney's fees (*id.* at 12).

Plaintiff's counsel originally filed a Complaint in the Superior Court of New Jersey, Mercer County, on August 16, 2023. (ECF No. 1 ("Complaint").) The original Complaint included eight counts under § 1983 and the NJCRA against Mercer County (under *Monell*) or (in his official capacity) Ellis: (1) a claim for denial of due process related to the denial of further treatment for his serious medical needs and a second mattress for his serious back condition against Ellis; (2) a claim for promulgation of a policy by a high-ranking public official denying him further treatment and a second mattress against Mercer County; (3) a First Amendment claim for retaliating against Plaintiff's exercise of protected activity by causing the denial of any further treatment for Plaintiff's serious medical needs and a second mattress for his serious back condition and for violating his constitutional rights to free exercise, petition, and access to the courts against Ellis; (4) a claim for retaliating against Plaintiff's exercise of protected activity by causing the denial of any further treatment for Plaintiff's serious medical needs and a second mattress for his serious back condition and for violating his rights to free expression, petition, and access to the courts against Mercer County; (5) a claim for denial of access to the courts and interference with his ability to assist his attorney in preparing an adequate defense to criminal charges against Ellis; (6) a claim for denial of access to the courts, to assist legal counsel, and to participate in his own

5

defense against Mercer County; (7) a claim for retaliating against Plaintiff's exercise of protected activity by causing the withholding of Plaintiff's legal work, legal documents, and other property against Ellis; and (8) a claim for retaliating against Plaintiff's exercise of protected activity by causing the withholding of Plaintiff's legal work, legal documents, and other property against Ellis.[1] (ECF No. 1-1 ¶¶ 1-99.) Defendants removed this action on or about October 6, 2023. (*See* ECF No. 1.) On November 29, 2023, Defendants moved to dismiss the Complaint. (ECF No. 9.)

After the matter was fully briefed (*see* ECF Nos. 9-13), on July 31, 2024, the Court granted the motion and provided Plaintiff with leave to submit an amended complaint within 45 days. *See Fisher v. Cnty. of Mercer*, No. 23-20947, 2024 WL 3594423 (D.N.J. Jul. 31, 2024); (ECF No. 15). Specifically, the Court construed Plaintiff's initial Complaint as suing Ellis in his official capacity only. *Fisher*, 2024 WL 3594423, at *4. The Court explained that official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Construing Counts One through Eight as arising under *Monell*, the Court refrained from addressing "Defendants' arguments that Plaintiff fails to state a claim for relief against Warden Ellis in his individual capacity or that Ellis is entitled to qualified immunity, which is only available to officers in individual capacity suits." *Id.* (footnote and citations omitted). The Court noted that "[i]f, however, Plaintiff intended to sue Ellis in his individual or personal capacity as a supervisor, he is free to submit an amended complaint that sets forth those facts and claims." *Id.* at *4 n.7. The Court then concluded that Plaintiff failed to state a *Monell* claim against Mercer County and (by extension) Ellis acting in his official capacity because Plaintiff did not allege sufficient facts showing that Ellis had final

---

[1] The original Complaint also included Count Nine alleging a claim under § 1983 and the NJCRA against fictitious individual Defendants acting in their individual or official capacities. (ECF No. 1-1 ¶¶ 100-03.)

6

policymaking authority in the relevant areas of medical care and the handling of Plaintiff's legal papers, legal documents, and other property. *Id.* at *5-6. "Because the Court grants the motion to dismiss the Complaint against the County of Mercer and Warden Ellis in his official capacity for failure to plead the elements of a *Monell* claim, it need not address County Defendants' other arguments." *Id.* at *6 n.9. "If Plaintiff elects to submit an amended complaint, he should include sufficient facts to meet the federal pleading standards . . . for each claim for relief." *Id.*

On October 28, 2024, Plaintiff filed his Second Amended Complaint.[2]  (ECF No. 28.) Defendants filed their pending Motion (ECF No. 31), Plaintiff filed an opposition brief (ECF No. 33), and Defendants filed a reply brief (ECF No. 34).

## II. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d

---

[2]    On August 7, 2024, Plaintiff filed an Amended Complaint (ECF No. 16), and, on September 27, 2024, Defendants moved to dismiss the Amended Complaint (ECF No. 23). On October 28, 2024, the Court entered a consent order withdrawing the dismissal motion and ordering Plaintiff to file an amended pleading. (ECF No. 27.)

892, 904 (3d Cir. 2021)).  A defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim."  *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III.   DISCUSSION

### A.   The Interference with Medical Treatment Claims Against Ellis

Defendants move to dismiss Count Two (the § 1983 claim[3] against Ellis for interference with prescribed medical treatment for a serious medical need) and Count Eight (a NJCRA claim[4] against Ellis for interference with prescribed medical treatment for a serious medical need).  (ECF No. 28 ¶¶ 47-49, 64-65.)

According to Defendants, Plaintiff does not identify a serious medical need.  (ECF No. 31-4 at 19; ECF No. 34 at 4-7.)  With respect to Plaintiff's alleged medical needs and treatment, Defendants specifically contend that: (1) Plaintiff arguably received more medical attention at MCCC than he had at CCCF because Plaintiff admitted that he was prescribed and received both a back and knee brace; (2) "[a]side from indicating that Plaintiff was permitted to sleep on a second mattress," he fails to sufficiently plead any serious medical condition or need; (3) Plaintiff does not allege that Plaintiff had a particular vulnerability to single mattresses, the lack of a second mattress constituted punishment under the Fourteenth Amendment, he asked for a second mattress

---

[3]   "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or the laws of the United States committed by a person acting under the color of state law."  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003) (citations omitted).

[4]   The NJCRA protects federal rights and substantive rights under New Jersey's Constitution.  *See Gormley v. Wood-El*, 218 N.J. 72, 97 (2014) ("Section 1983 applies only to deprivations of federal rights, whereas N.J.S.A. 10:6-1 to -2 applies not only to federal rights but also to substantive rights guaranteed by New Jersey's Constitution and laws.").  The NJCRA is typically treated as the state court analog to § 1983, and the Court considers the claims together.

after it was removed, requested any other medical treatment, or had any serious medical need manifesting after the mattress's removal; (4) general allegations of dizziness, pain, and overall ill feelings do not establish a serious medical need and are not related to any medical diagnosis; and (5) a lay person cannot tell from Plaintiff being provided with a back brace, knee brace, and mattress that he still needed immediate medical attention or was at risk of permanent injury. (ECF No. 31-4 at 20; ECF No. 34 at 5-7.) Defendants further assert that the Second Amended Complaint fails to allege that Ellis knew that Plaintiff had a particular vulnerability to single mattresses and ignored the risk of serious harm and that the mere disagreement with medical judgments is insufficient to state a constitutional claim. (ECF No. 31-4 at 20; ECF No. 34 at 6.)

According to Plaintiff, "[u]nder the *Pearson* framework, [Plaintiff's] well-pleaded allegations of interference with a prescribed medical treatment by Warden Ellis, for a non-medical reason, do plausibly state a claim for deliberate indifference to a serious medical need." (ECF No. 33 at 3 (discussing *Pearson v. Prison Health Serv.*, 850 F.3d 526 (3d Cir. 2017)) ) In their reply brief, Defendants contend that the allegations in this case are completely different from the facts in *Pearson*, where the inmate complained of severe abdominal pain and constant bleeding and required an appendectomy and a urethral incision and was, at one point, forced by medical staff to crawl across the floor to the wheelchair before he was taken to the infirmary. (ECF No. 34 at 5-7.)

The Court agrees with Plaintiff that he alleges sufficient factual content to state a cognizable claim for interference with his medical treatment.

The Eighth Amendment's prohibition on cruel and unusual punishment requires prison

9

officials to provide basic medical treatment to inmates.[5] *See Perotti v. United States*, 664 F. App'x 141, 144 (3d Cir. 2016) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)); *see also Duran v. Merline*, 923 F. Supp. 2d 702, 719 (D.N.J. 2013) (explaining that the Constitution mandates that prison officials satisfy inmates' "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety" (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993))). To plead deliberate indifference to serious medical needs, an inmate must allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff." *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citing *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)).

"A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (per curiam) (quoting *Atkinson*, 316 F.3d at 272-73).

The Third Circuit has found "'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Drawing all reasonable inferences in Plaintiff's favor, and accepting the factual allegations in the Second Amended Complaint as true, the Court concludes that Plaintiff plausibly alleges that

---

[5]   As a pretrial detainee, Plaintiff's right to adequate medical care arose under the Due Process Clause of the Fourteenth Amendment. *See Natale*, 318 F.3d at 581. But courts analyze such claims using the same deliberate indifference standard that applies under the Eighth Amendment. *See id.* at 581-82.

Ellis ordered the denial of Plaintiff's "necessary medical treatment based on a non-medical reason," *id.*; *see also Wilson*, 57 F.4th at 140.  First, Plaintiff's Second Amended Complaint provides sufficient factual matter to allow the Court to draw a reasonable inference that Plaintiff had a serious medical need, *i.e.*, he was diagnosed by a physician with a medical condition and prescribed treatment for this condition.  *See Mitchell*, 492 F. App'x at 236.  Plaintiff specifically alleges that a nurse practitioner (Gordon) reviewed Plaintiff's CCCF "chart" and "wrote on the chart that Plaintiff had chronic back pain consisting of a herniated nucleus pulposus confirmed by MRI."  (ECF No. 28 ¶¶ 11-13).  The nurse practitioner also "read on the chart that a physician at CCCF had prescribed a double mattress for Plaintiff."  (*Id.* ¶ 13.)  Furthermore, Plaintiff was allegedly given back and knee braces and allowed to lie on two mattresses to get relief from his back pain so he could sleep.  (*Id.* ¶¶ 16-19.)

Second, Plaintiff adequately alleges that Ellis delayed or denied this prescribed medical treatment *for non-medical reasons*.  According to the Second Amended Complaint, Ellis learned that Plaintiff had filed a civil suit against Camden County and C.F.G.  (*Id.* ¶ 25.)  On July 31, 2022, the second mattress was taken away.  (*Id.* ¶ 19.)  Gordon admitted to Plaintiff that Ellis ordered officers to take away Plaintiff's second mattress in retaliation for him filing the lawsuit.  (*Id.* ¶¶ 29-30.)  "Moreover, on August 10, 2022, the nurse practitioner Nancy Gordon admitted to Plaintiff that her hands were tied and there was nothing she could do to order him a second mattress so he would get further relief for his serious back condition."  *Id.*

Given the facts alleged in the Second Amended Complaint, Defendants do not meet their burden of "showing that" Counts Two and Eight of the Second Amended Complaint "fail to state a claim," *Plavix Mktg., Sales Pracs. & Prod. Liab. Litig.,* 974 F.3d at 231 (citation omitted).  For instance, Defendants indicate that Plaintiff fails to show a serious medical need because it was not

obvious to a lay person from Plaintiff being equipped with a back brace, knee brace, and mattress that he needed immediate attention from a doctor or was at risk of permanent injury. (ECF No. 31-4 at 20.) However, Plaintiff's pleading satisfies the "serious medical need" requirement at this preliminary stage of the proceeding by alleging that a medical professional documented in Plaintiff's medical records that Plaintiff had chronic back pain consisting of a herniated nucleus pulposus confirmed by an MRI and that a physician had prescribed a double mattress for Plaintiff. (ECF No. 28 ¶¶ 12-13); *see also Mitchell*, 492 F. App'x at 236.[6] The fact that the alleged medical conditions and lack of treatment were not as severe as the circumstances present in *Pearson* also does not justify dismissal of Plaintiff's medical care claims. (*See* ECF No. 34 at 5-7.) In fact, *Pearson* was decided on a motion for summary judgment, and not a motion to dismiss. *See Pearson*, 850 F.3d at 530.

Accordingly, the Court denies Defendants' Motion as to Counts Two and Eight.[7]

**B.     Access to the Courts and Sixth Amendment Interference Claims Against Ellis**

In Count Four, Plaintiff alleges a § 1983 claim for denial of his rights of access to the courts, to assist legal counsel, and participate in his own defense against Ellis. (ECF No. 28 ¶¶ 54-55.) Count Ten asserts an equivalent claim against Ellis under the NJCRA. (*Id.* ¶ 69.)

According to Defendants, "[t]he [Second Amended Complaint] fails to allege a cognizable access to the courts claim because Plaintiff has not pled that he suffered actual harm." (ECF No.

---

[6]     In contrast, the medical records in *Mitchell* "did not indicate a wheelchair was necessary," and a nurse informed the defendants that the inmate could not have a wheelchair for transport. *Mitchell*, 492 F. App'x at 236.

[7]     Plaintiff further relies on medical records attached to his brief. (*See* ECF No. 33 at 2 (citing ECF Nos. 33-1, 33-2).) Defendants request that the Court ignore all arguments related to the new exhibits because it is well established that a plaintiff may not amend a complaint in a brief filed in opposition to a motion to dismiss. (ECF No. 34 at 3-4.) The Court need not (and does not) rule on Defendants' objections because it concludes that, without the exhibits, the Complaint states a plausible claim of interference with Plaintiff's medical treatment.

12

31-4 at 23.) The Court agrees with Defendants that Plaintiff's access to the courts claims must be dismissed. However, Plaintiff also asserts in Counts Four and Ten claims for interference with his Sixth Amendment rights. To the extent that Defendants move to dismiss his Sixth Amendment claims, the Motion is denied because actual injury is not a requirement for such claims [8]

### 1. Access to the Courts

Prisoners maintain a "fundamental constitutional right of access to the courts," embodied in the First and Fourteenth Amendments. *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). The Third Circuit has held that pretrial detainees have a right of access to the courts with respect to legal assistance and participation in preparing a defense against pending criminal charges. *See, e.g.*, *Prater v. City of Philadelphia*, 542 F. App'x. 135, 137-38 (3d Cir. 2013); *see also May v. Sheahan*, 226 F.3d 876, 883-84 (7th Cir. 2000). A pretrial detainee may also raise claims alleging interference with his Sixth Amendment rights. *See Prater*, 542 F. App'x at 137. In contrast, convicted prisoners may only proceed on access-to-courts claims in two situations: "challenges (direct or collateral) to their sentences and conditions of confinement." *Id.* (citing *Lewis*, 518 U.S. at 354-55). Because Plaintiff was a pretrial detainee, this restriction does not apply to him.

There are two general types of access to the courts claims. Forward-looking claims involve official action that "frustrates a plaintiff . . . in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). In such a claim, "[t]he opportunity has not

---

[8] Defendants argue that Plaintiff's allegation that he pled guilty on October 6, 2023 is false because the Judgement of Conviction "shows that Plaintiff's criminal matter was adjudicated by a guilty plea on May 23, 2022" (and he was then sentenced on October 6, 2023 pursuant to the May 23, 2022 plea arrangement). (ECF No. 31-4 at 23-24 (citing ECF No. 31-2).) Plaintiff responds that the document does not show that he appeared in open court on May 23, 2022 and entered a guilty plea. (ECF No. 33 at 5.) This dispute need not (and is not) resolved because of its irrelevance to the Court's resolution of Defendants' Motion.

been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* In backward-looking claims, the official acts "allegedly have caused the loss or inadequate settlement of a meritorious case" or the loss of a particular type of relief. *Id.* at 414 (citation omitted).

Plaintiff asserts a backward-looking claim, claiming that Ellis's actions withholding his legal work and documents prevented him from assisting his criminal attorney in preparing an adequate defense to criminal charges so he could "renege" on his "formerly evidenced intent to plea bargain," and, because of this failure to assist defense counsel, he had to plead guilty to a reduced charge (for which he was sentenced to a prison term). (ECF No. 28 ¶¶ 38-42.)

In both forward-looking and backward-looking types of cases, however, the plaintiff must identify a "nonfrivolous" or "arguable" underlying claim. *Christopher*, 536 U.S. at 415 (citing *Lewis*, 518 U.S. at 353 & n.3). Indeed, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* This is so because "a prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis*, 518 U.S. at 350). That is, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library access to harm in underlying action). As explained by the Supreme Court, "because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's

14

law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351.

In the Second Amended Complaint, Plaintiff fails to allege an actual injury traceable to Ellis's conduct. According to the pleading, Plaintiff was transferred from MCCF to BCDC, on August 18, 2022, and from that date until December 16, 2022, Ellis withheld his legal work and documents despite several requests for the documentation from BCDC officials, family members, and Plaintiff's criminal attorney. (ECF No. 28 ¶¶ 33-37.) To the extent that Plaintiff baldly claims that the withholding of these documents in August to December 2022 resulted in him being unable to assist his counsel in preparing a defense to the charges and take back his intent to plea bargain, which then forced him to proceed with a guilty plea in October 2023, such conclusory assertions must be disregarded. *See Wilson*, 57 F.4th at 140 (stating that courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements" (citing *Oakwood Lab'ys LLC*, 999 F.3d at 903)). Plaintiff does not provide sufficient facts allowing the Court to draw the reasonable inference that the alleged lack of access to the legal work and documents caused this extenuated chain of events. In fact, Plaintiff admits in his Second Amended Complaint that he received his legal work and documents on December 16, 2022, he was represented by counsel in the criminal proceeding, and he did not plead guilty to the charges until October 6, 2023, approximately ten months after the requisite documents were sent to him at BCDC. (ECF No. 28 ¶¶ 35, 42.)

Plaintiff argues that "*how* the withholding of his legal documents caused plaintiff to be unable to assist his attorney in the preparation for the court proceeding on October 6, 2023, is factual matter [sic] which cannot be resolved on a motion to dismiss." (ECF No. 33 at 5.) According to Plaintiff, he must be given "the benefit of the doubt that the withholding of his legal

documents caused him to be unable to assist his attorney in the preparation for the court proceeding on October 6, 2023." (*Id.*) But it is well established that the complaint must "contain *enough facts* to state a claim to relief that is plausible on its face." *Wilson*, 131 F.4th at 140 (emphasis added) (citation omitted). In this context, this means that Plaintiff must allege factual content—*i.e.*, factual matter—sufficient for the Court to infer that a causal link exists between the withholding of the documents and an actual injury, *Clark*, 55 F.4th at 178; *Diaz*, 532 F. App'x at 63. For the foregoing reasons, Plaintiff fails to satisfy this requirement,

Accordingly, the Court grants the Motion as to Plaintiff's access to the courts claims in Counts Four and Ten.

### 2. Sixth Amendment Interference

"Under the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him." *Prater v. City of Philadelphia*, No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (citing *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)). Addressing restrictions on attorney contact, the Supreme Court has "held that inmates must have a reasonable opportunity to seek and receive the assistance of attorneys' and that [prison] [r]egulations and practices that unjustifiably obstruct the availability of professional representation . . . . are invalid." *Id.* (cleaned up) (alterations in original) (quoting *Benjamin*, 264 F.3d at 184). "Thus, where an institutional restriction impedes a pretrial detainee's access to criminal counsel, 'the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.'" *Id.* (cleaned up) (quoting *Benjamin*, 264 F.3d at 187). A prison regulation restricting a pretrial detainee's contact with counsel will be unconstitutional where it unreasonably burdens the inmate's opportunity to consult with his counsel and prepare his defense. *See id.*

Notably, unlike a First Amendment access to the courts claim, case law indicates that a claim of unreasonable interference with a Sixth Amendment right to counsel does not require a showing of actual injury. *See Benjamin*, 264 F.3d at 185 (pretrial detainee has standing to assert unreasonable interference with Sixth Amendment right even if the interference did not result in "actual injury"). Although the Third Circuit has not ruled on this issue in a published opinion, the court, in a non-precedential opinion, observed that the district court failed to address the prisoner's Sixth Amendment interference with right to counsel claim and disagreed with the district court's implicit conclusion that the claim required a showing of actual injury. *Prater,* 542 F. App'x at 139 n.5 (affirming in part on alternate basis).

Because Plaintiff is not required to allege actual injury to state a cognizable claim of unreasonable interference with his Sixth Amendment right to counsel, the Court denies the Motion as to Plaintiff's Sixth Amendment interference claims in Count Four and Count Ten.

### C.   Retaliation Claims Against Ellis

In the Second Amended Complaint, Plaintiff asserts § 1983 and NJCRA retaliation claims against Ellis for "Plaintiff's exercise of protected activity causing denial of any further treatment for Plaintiff's serious medical needs" (Count Three and Nine, respectively). (ECF No. 28 ¶¶ 50-53, 66-68 (emphasis omitted).) Plaintiff also alleges retaliation claims against Ellis under § 1983 and the NJCRA for "Plaintiff's exercise of protected activity causing withholding of Plaintiff's legal work, legal documents, holy book and other property" (Counts Six and Twelve). (*Id.* ¶¶ 58-60, 71-73 (emphasis omitted).)

"To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some "adverse action" at the hands of prison officials,' and (3) 'his constitutionally protected conduct was "a substantial or motivating factor"

17

in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

According to Defendants, because "Plaintiff has failed to plead a proper claim of deliberate indifference to serious medical needs claim, or articulate the need for additional medical services, and denial of access to courts claim, he cannot demonstrate an adverse action brought against him by prison officials nor can he establish a causal link." (ECF No. 31-4 at 26.) However, to state a retaliation claim, Plaintiff need not allege that the adverse action violated his constitutional rights. Regarding the second element, an action is adverse if it "would deter a reasonably firm prisoner from exercising his First Amendment rights." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser,* 241 F.3d at 333). "An adverse consequence need not be great in order to be actionable; rather, it need only be more than de minimis." *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (cleaned up). Defendants do not address whether the denial of a second mattress or the withholding of legal materials would deter a reasonably firm prisoner from exercising his First Amendment rights. Indeed, the Court has denied Defendants' Motion to dismiss Plaintiff's constitutional claims for interference with his medical treatment and interference under the Sixth Amendment.

Defendants' Motion to dismiss is denied as to Counts Three, Six, Nine, and Twelve.

### D.     Qualified Immunity

Finally, Defendants argue that Ellis is entitled to qualified immunity because he did not violate Plaintiff's clearly established rights.

"At the motion-to-dismiss stage, courts evaluate qualified immunity for a constitutional claim by examining (i) whether the complaint contains plausible allegations of a constitutional

violation and (ii) whether the asserted constitutional right is clearly established."[9] *Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021) (citing *Wood v. Moss*, 572 U.S. 744, 757 (2014)). "The defendant official has the burden to establish they are entitled to qualified immunity." *Bethlehem Manor Vill., LLC v. City of Bethlehem*, No. 22-5215, 2024 WL 4367922, at *10 (E.D. Pa. Sept. 30, 2024) (citing *E. D. v. Sharkey*, 928 F.3d 299, 306 (3d Cir. 2019)), *appeal filed*, No. 24-2925 (3d Cir. Oct. 17, 2024); *see also Plavix Mktg., Sales Pracs. & Prod, Liab. Litig.*, 974 F.3d at 231-32 (stating that the moving defendant has the burden of showing that a complaint fails to state a claim under Rule 12(b)(6)); *Scotti v. Univ. Corr. Health Care*, No. 19-13981, 2022 WL 4217766, at *11 (D.N.J. Sept. 13, 2022) (stating that qualified immunity is an affirmative defense and the burden of pleading rests with the defendant (citing *Gomez v. Toledo*, 446 U.S. 635, 639 (1980))). "[I]t is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Seidle v. Neptune Twp.*, No. 17-4428, 2021 WL 1720867, at *7 (D.N.J. May 1, 2021) (alteration in original) (quoting *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009)).

Defendants merely contend that Plaintiff does not plead that Ellis violated a clearly established right because he failed "to properly plead his § 1983 [or NJCRA] claim[s]." (ECF No. 31-4 at 27.) Given the conclusory nature of Defendants' qualified immunity defense, the Court concludes that, with respect to Plaintiff's medical care and retaliation claims, Defendants fail to meet their burden at this early stage of this litigation.[10]

---

[9] Defenses and immunities available under § 1983 (such as qualified immunity) apply to claims under the NJCRA. *See Kelley v. Reyes*, No. 19-17911, 2025 WL 618207, at *8 n.7 (D.N.J. Feb. 26, 2025).

[10] Because the Court concludes that Plaintiff does not plausibly allege access to the courts claims, the Court need not (and does not) consider whether the asserted constitutional rights were clearly established.

19

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion is **GRANTED in part** and **DENIED in part**. An appropriate Order follows.[11]

Dated: June 25, 2025

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**

---

[11] Defendants also request that discovery be stayed pending the outcome of the Motion. (ECF No. 31-4 at 28-29.) The request to stay is denied as moot.